ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY .*v.* MARTIN.

Opinion delivered January 18, 1896.

ACCIDENT AT RAILWAY CROSSING—CONTRIBUTORY NEGLIGENCE.—One who voluntarily goes upon a railroad track at a crossing upon a dark night, without stopping or listening for the approach of a train, and stands there a moment talking, until he is struck and killed by a train backing on the track, is, as a matter of law, guilty of contributory negligence precluding a recovery for his death.

BURDEN OF PROOF—CONTRIBUTORY NEGLIGENCE.—The burden on a defendant of showing contributory negligence is removed where it is affirmatively shown by plaintiff's evidence.

Appeal from Cross Circuit Court.

JAMES E. RIDDICK, Judge.

*Dodge & Johnson*, for appellants.

1. The verdict was without evidence to sustain it. The evidence is that deceased never looked or. listened before or after going on the tracks.

2. The verdict is contrary to law. A person going upon the tracks of a railway company must use due

precautions by looking and listening. No neglect of the company will excuse this duty of using both eyes and ears. 54 Ark. 434; 24 A. & E. R. Cas. 124; 56 Ark. 459; 29 Mich. 274; 2 Binney (Pa.) 159. He must make vigilant use of his senses to detect the approach of trains. 57 N. Y. S. R. 7; 47 N. Y. 400; 105 Mo. 371; 113 Mo. 1; 105 N. C. 140. He is not excused by the assumption that the train men will give proper signals of approach. 86 N. Y. 616; 33 Kas. 427; 51 Mo. App. 562; 42 N. J. L. 180; 61 Tex. 503; 46 Fed. 343; 39 A. & E. R. Cas. 612; 102 Pa. St. 425; 81 Ala. 185; 70 Wis. 216; 69 Mich. 109; 81 Ala. 177; 103 Ind. 31; 128 *id.* 138; 16 N. Y. 909; 34 W. Va. 538; 17 Or. 5; 57 Fed. 921.

*Block & Sullivan*, for appellee.

1. The verdict is supported by the evidence. When certain witnesses testify that signals were given, and certain others that they did not hear them, and could have heard them had they been given, the question as to whether or not they were given is one for the jury. 101 N. Y. 419; 75 *id.* 320; 36 *id.* 132; 57 Wis. 59. Even to concede that the statutory signals were given, they were certainly rendered nugatory and of no avail by the proximity of other moving trains, which is equal negligence on part of appellant. 101 Ind. 522; 51 Am. Rep. 761. The evidence shows that appellant's employees backed a train over the principal crossing of a populous town on a dark night, without the customary signals and with no light on the forward end of the train. This will support a finding of want of ordinary care. 52 N. Y. 215; 88 *id.* 13; 20 N. W. 93.

2. The burden of proving contributory negligence was on the appellant, and, if there is no proof at all on the subject, the presumption of due care obtains. 46 Ark. 423; *Ib.* 182; 46 *id.* 460.

3.  A foot passenger is not required to stop before going upon the tracks, except when it will better enable him to use his senses of sight or hearing.   54 Ark. 431; 79 N. Y. 73; 71 *id*. 285; 9 N. W. 575.

4.  The track, if visible, may have been a warning to deceased to look and listen for approaching trains, and, having thus discovered nothing; he had the right to proceed, on the theory that the railway company would use the ordinary precautions to show the approach of their trains.   56 Ark. 459; 17 Or. 5; 47 Pa. 51, 244; 86 Am. Dec. 541.

5.  Contributory negligence is a question of fact for the jury to determine from all the circumstances and surroundings.   52 Ark. 368; 57 *id*. 429; 88 N. Y. 13; 79 *id*. 72; 58 *id*. 451; 92 Mass. 189; 149 U. S. 43-5; 17 Wall. 657; 135 U. S. 554; 139 *id*. 469; 144 *id*. 408; 29 Fed. 489; 60 *id*. 999.

6.  It is true that a traveler on a highway will not be excused from due diligence by the assumption that the trainmen will give the proper signals, but it is also true that where looking and listening can and does discover nothing, the traveler has a right to expect that the company would perform its duty.   56 Ark. 49; 17 Ore. 5.

7.  Instruction 3 is approved by this court, and sustained by authority.   42 Ark. 321; 36 *id*. 41; 35 *id*. 614; 11 N. W. 67; 9 *id*. 475; 52 N. Y. 215; 20 N. W. 93; 70 Tex. 126; 8 Am. St. 582.

8.  The fourth instruction is simply a statement of the duty enjoined upon the appellant by statute.   53 Ark. 201; Sand. & H. Dig. sec. 6196.

9.  Instruction 8 is sustained by 54 Ark. 431; 88 N. Y. 13; 79 *id*. 72; 78 *id*. 518; 92 Mass. 189; 20 N. W. 93; 10 *id*. 268; 7 N. E. 801.

WOOD, J.   This suit is for damages resultant it is alleged, from the negligent killing of A. S. Martin

by the appellant.   The suit was brought for the benefit
of the estate, and of the widow and next of kin.   The
defense was a denial of negligence, and a plea of con-
tributory negligence.   The trial resulted in a judgment
for seven thousand dollars, which this appeal seeks to
reverse.

The negligence of appellant is established by proof
which is sufficient, and the judgment must be affirmed,
unless the deceased was guilty of contributory negli-
gence, which is the only question we need discuss.
Deceased was killed where the railway crosses Union
street in the town of Wynne, as shown by a rude plat,
which we clip from brief of counsel and append, to
make the testimony as to location more intelligible.

The three tracks at Union street were six or eight
feet apart.   Deceased and the witness, his companion,
were crossing over the main line at about seven or eight
o'clock at night.   The road was rough, and the night
very dark.   The witness said to deceased, just before
he came to a stand, "If you are not acquainted with
the road, let me take your arm;" and witness took de-
ceased's left arm with his right.   A local going south
was on the east track and lacked about a box car, or half
a box car and caboose, of passing the crossing when they
walked upon the track of the main line.   They "halted
a second or moment," until the train passed the cross-
ing; and, "while standing there talking," the train back-
ing from the south knocked witness and deceased from
the track, running over and injuring deceased, from
which injuries he died about three o'clock next morn-
ing, after suffering intensely.   Witness was looking to-
ward the south, the direction whence the train that
struck them was coming, and whither the passing train
was going.   Witness says he did not see the train that
struck them until just a moment before, and for the
reason that it was so dark, and that there was no light

on the caboose. Witness was asked, "Did you listen for any trains while you were there?" and replied, "I do not know that we listened, and the train was passing right in front of us. I do not know that we particularly listened for the train. I do not recollect about our listening for the approach of a train." He further said : "Had we listened, I do not think we could have heard the train that was coming from the south, because of the one moving right in front of us. The train that struck us was approaching very stealthily. It made very little noise." Witness was then asked, "How was the one that was going south?" and replied, "I do not know. It was just making ordinary noise. It was not running at a very high rate of speed; probably three or four miles an hour. They were pulling out of the switch." Witness did not hear any bell ringing on the train that was pulling out. Witness was then asked at what rate the train was moving that struck them, and replied : "I do not know that. I should judge from the distance it knocked me, it must have been going at least eight miles an hour. I do not know, of course. I could not tell anything about that, because it just bumped up against us. I should think, though, about six or eight miles an hour." Witness indicated, by the distance to a certain object which he pointed out, that the train knocked them about fifteen feet.

It was shown by this witness, who was a physician, that he had examined the deceased, Dr. Martin, that day, for life insurance, and that deceased's hearing was good, while witness' hearing was defective, both ears being affected. The crossing where Dr. Martin was killed was in the main part of the city, and people were constantly passing over it. Two locals, running from Knoble to Wynne, did all their switching at Wynne. This occurred every day. The train had been doing

switching about two hours when the accident took place.

This was all the evidence bearing upon the question of contributory negligence. A dispassionate view of it, we think, can lead to but one conclusion, viz., had the deceased made that use of his senses which the law requires of one before going upon, or while crossing over, a railway track, his death would not have occurred, notwithstanding the negligence of the company.

We make this statement, knowing the settled law to be that the question of whether there is negligence or contributory negligence is always for the jury, unless the facts are undisputed, and susceptible of but one conclusion. *Richmond, etc., R. Co.* v. *Powers,* 149 U. S. 43; *Grand Trunk R. Co.* v. *Ives,* 144 U. S. 408; *Delaware, etc., R. Co.* v. *Converse,* 139 U. S. 469; *Washington, etc., R. Co.* v. *McDade,* 135 U. S. 554; *Kansas City, etc., R. Co.* v. *Kirksey,* 60 Fed. Rep. 999; *Hathaway* v. *East Tenn., etc., R. Co.,* 29 Fed. 489; *Seefeld* v. *Ry. Co.* 70 Wis. 216; *Hendricken* v. *Meadows,* 154 Mass. 599; *Detroit, etc., R. Co.* v. *Van Steinburg,* 17 Mich. 992; 2 Wood on Railroads, 1458, and cases cited; Beach, Contrib. Neg. 450–51; Thompson, Neg. 1239; *Artz* v. *Ry. Co.* 34 Iowa, 153.

It is equally as well settled, where the facts are undisputed, and there could not, in reason and fairness, be any difference of opinion as to the conclusion to be drawn from them, that the question of negligence or contributory negligence is one of law. *Grand Trunk R. Co.* v. *Ives, supra; Seefeld* v. *Ry. Co. supra; Mann* v. *Belt Ry. Co.* 128 Ind. 138; *Mynning* v. *Ry. Co.* 28 A. & E. Ry. Cases, 665; *Reading, etc., R. Co.* v. *Ritchie,* 102 Pa. St. 425; *Apsey* v. *Ry. Co.* 83 Mich. 440; *Emry* v. *Ry. Co.* 109 N. C. 589; 2 Wood, Railroads, 1458, and cases cited; *Straugh* v. *Ry. Co.* 65 Mich. 706; *Chicago, etc., Ry. Co.* v. *White,* 46 Ill. App. 446; *Gardner* v. *Ry.*

As to contributory negligence.

*Co.* 97 Mich. 240; *Grippen* v. *Ry. Co.* 40 N. Y. 34; *Grostick* v. *Ry. Co.* 90 Mich. 594; *Atchison, etc., R. Co.* v. *Priest,* 50 Kas. 16; *Laverenz,* v. *Ry. Co.* 10 N. W. Rep. 268; *Artz* v. *Ry. Co.* 34 Iowa, *supra,* and numerous cases there cited; Beach, Cont. Neg. secs. 447, 453; *Abend* v. *Ry. Co.* 111 Ill. 202; *Fernandes* v. *Ry. Co.* 52 Cal. 45; Thompson, Neg. sec. 1236.

The latter proposition finds practical application in the facts of this record. The uncontroverted proof is that deceased and his companion *walked over the west track and upon the main line, where they stopped and stood for a "second or moment," talking, waiting for the train on the east track to pass out, when the backing train struck them.* The language of the witness was: "*when we walked upon the track of the main line.*" This language shows conclusively that they knew, not only that they were upon the railway track, but the particular track upon which they were standing. True, there was some evidence that deceased was a stranger in the town, and not familiar with the location; but it was also shown that he had, but a short while before, passed over the same crossing, and the language of the witness quoted above indicates affirmatively that they knew where they were. There is no proof that they stopped, nor that they listened for the approach of a train before they walked upon the track of the main line. But it is contended by the appellee that there is also an absence of direct proof that they did not take these precautions, and that, as the burden is upon the appellant to show contributory negligence, he must fail for want of proof to overcome the presumption of due care.

**Burden of proof of contributory negligence.** The burden of proof, as the court correctly told the jury, was upon the railroad to show contributory negligence, unless it was shown by evidence for the plaintiff. It would be difficult, if not impossible, for the railway company to show by direct testimony that deceased and

his companion did not use their senses of sight and hearing. Whether they did or not was a fact which might be said to be peculiarly within their knowledge. But every requirement of the law, as to the appellant, concerning the burden of proof has been met by the proof for appellee. This shows that a witness, whose hearing was and had been defective for three or four years, heard, at the distance of about twelve feet, the noise of the train that was passing out. This train was ringing no bell, and only making ordinary noise. Does it not follow, as an undisputable inference, that deceased, whose hearing was shown to be unimpaired, would also have heard at the same, or even greater distance, the noise of the train that struck him, had he listened? This is the only reasonable conclusion. For, although the witness says that the train which struck deceased was approaching stealthily, and gave it as his opinion that it could not have been heard, had they listened, yet he says he thought it was going six or eight miles an hour, which was about twice as fast as he thought the other train was going, which he did hear. His opinion, therefore, as to what he *could not have heard* had he listened, is shown to have been fallacious by what he actually did hear. Besides, the deceased could not depend upon another's senses to warn him of danger. His hearing was better than that of the witness, his companion. *Wiwirowski* v. *Lake Shore, etc. R. Co.* 124 N. Y. 420.

It is not negligence, *per se*, to be or go upon a railway track. That depends entirely upon the circumstances, having in view the dangers to be apprehended, and the precautions which are, or should be, used to avoid them. A railway track must always be regarded as a dangerous place. Although trains usually have their stated times, and come and go with more or less precision, still accidents and various contingencies cause delays and irregularity in the running of trains, so that

no one has the right to expect that a track may not be used by a passing train at any time. Hence, the track itself is a perpetual reminder of danger. *Mo. Pac. R. Co.* v. *Moseley*, 57 Fed. Rep. 921 ; *Little Rock, &c. R. Co.* v. *Cavenesse*, 48 Ark. 106 ; *Penn. R. Co.* v. *Matthews*, 7 Vroom, 531.

This is not the case of one who is suddenly and unexpectedly placed in a situation of danger which is calculated to bewilder the understanding and distract the senses. There was no danger from the train in front of deceased, for he could see that it was just passing out, and almost over the crossing. The noise it was making was but ordinary, and there is no reason why it should have prevented his listening for a train on the intervening tracks, for there was his only danger. True, the witness said that the night was so dark that they could not see more than three feet from them. But, if one sense was impaired, or rendered useless, the other should have been used with the greater diligence. *Fletcher* v. *Ry. Co.* 149 Mass. 127 ; *Wheelwright* v. *Boston, &c. R. Co.* 135 Mass. 225 ; *Cleveland Ry. Co.* v. *Terry*, 8 Oh. St. 570 ; *Central R. Co.* v. *Feller*, 84 Penn. St. 226 ; *Ry.* v. *Haslan*, 38 N. J. L. 147 ; *Steves* v. *Ry. Co.* 18 N. Y. 422 ; Thompson, Neg. secs. 431, 59, 1203, 51.

The case we have under consideration is that of one who voluntarily went upon a railway track without stopping, and without listening for the approach of a train, and stood there for a "second or moment, talking," until he was killed. The failure to take one or both of these precautions was the proximate cause of his death, and there was nothing in the proof to justify or excuse such failure. 2 Wood, sec. 319.

Some authorities hold that it is the duty of a traveler approaching a railroad crossing to stop, and look, and listen for the approach of a train before proceeding over. *Mo. Pac. R. Co.* v. *Moseley*, 57 Fed. Rep. 921 ;

*Wilds* v. *Ry. Co.* 29 N. Y. 315; *Schultz* v. *Ry. Co.* 5
Reporter, 376; *Penn. Canal Co.* v. *Bentley*, 66 Pa. St.
30; *Penn. R. Co.* v. *Beale*, 73 Pa. St. 507; *Philadelphia, &c., R. Co.* v. *Stinger*, 78 *id.* 219; *Penn. R. Co.*
v. *Barnett*, 59 *id.* 259.

We have not laid down the rule thus strictly, but a
person who would pass over a railroad at a crossing, or
elsewhere, must do all that a man of ordinary care
would do under similar circumstances to avoid any probable or possible danger from a passing train. Whether
that requires stopping, as well as looking and listening,
depends upon whether, without it, the danger to be apprehended could be so well ascertained and averted.
*Railway Co.* v. *Cullen*, 54 Ark. 431; *Railway Co.* v.
*Johnson*, 59 Ark. 122; *Railway Co.* v. *Tippett*, 56 Ark.
457. The law has fixed the above as the measure of
duty, and a failure to exercise one or all of these precautions, as the occasion may demand, without any contravening circumstances, is negligence, pure and simple.
Beach, Contrib. Neg. sec. 452; Whittaker's Smith,
Neg. 401, note; Thompson on Neg. pp. 426, 1238.

A "second or moment" of time often costs a man
his life. If the deceased, Dr. Martin, had but stopped
for a moment before passing over the west track, or before going upon the main track, instead of after he had
gone upon it, or had he but listened before going and
stopping upon the same, doubtless he would have
escaped; for, if he had stopped but a "second or moment" before going on the track, the train would have
passed, or, if he had listened, he would have heard
it. This was a sad and deplorable catastrophe, to be
sure; but we are convinced that the proof for appellee
raises such a presumption of negligence on the part of
her intestate that, in the absence of any direct testimony to the contrary, it should be taken as conclusive,
and so declared as a matter of law. *Baltimore, &c.,*

*R. Co.* v. *Whitacre*, 35 Ohio·St. 627; Beach, Contrib. Neg. secs. 449–452; *Cotton* v. *Wood*, 8 C. B. 568; *Cornman* v. *Ry. Co.* 4·Hurl. & N. 781; Thompson on Neg. pp. 426, 1237; *Greenleaf* v. *Ry. Co.* 29 Io. 22; *Hathaway* v. *E. Tenn., &c., R. Co.* 29 Fed. Rep. 489; Shearman & Red. on Neg. sec. 56, and cases cited; *Penn. R. Co.* v. *Matthews*, 7 Vroom. 531.

We find no error in any of the instructions, except that those leaving the jury to determine whether the deceased was guilty of contributory negligence were abstract, and in that sense erroneous. *Railway Co.* v. *Tippett*, 56 Ark. 457.

Reversed and remanded.